United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 14, 2004**

Charles R. Fulbruge III
Clerk

REVISED FEBRUARY 6, 2004

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-30697

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT RANDALL REINHART,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

Before DAVIS, WIENER and STEWART, Circuit Judges.

WIENER, Circuit Judge:

Petitioner-Appellant Robert Randall Reinhart filed a motion under 28 U.S.C. § 2255 challenging the sentence imposed following his 1997 guilty plea to one count of conspiracy to commit sexual exploitation of children. The district court denied both his motion and his request for a certificate of appealability ("COA"). We subsequently granted a COA on the sole issue whether Reinhart's counsel was ineffective for failing to appeal the district court's decision to hold him accountable in sentencing for two minor males depicted in a pornographic videotape created by his co-conspirator

prior to the formation of the conspiracy. Concluding that the district court erred in denying Reinhart's requested relief, we reverse the denial of his § 2255 motion and grant such relief, vacating his sentence and remanding for resentencing.

## I. FACTS AND PROCEEDINGS

Early in 1997, the German National Police learned of the existence of an Internet website containing eleven child pornography files transmitted by Precision Electric Billboard Services of Charlotte, North Carolina ("Precision Electric"). The German police relayed this information to the United States government (the "government") which traced the files to Reinhart and his roommate, Matthew Carroll. Reinhart was a customer of Precision Electric and had been using its home page services to transmit child pornography files via the Internet.

Government officials obtained and executed a search warrant for Reinhart and Carroll's residence in Lafayette Parish, Louisiana. The search uncovered 1800 images of child pornography on Reinhart's computer storage media, including ten of the files identified by the German police. Agents also seized several rolls of film and videotapes depicting pornographic images of children, as well as diskettes, video cameras, and 35mm film cameras.

The day after the search, Reinhart surrendered a videotape to the FBI depicting Carroll engaging in oral and anal sexual intercourse with two (2) minor males who were then 13 and 14 years

old, identified as minor white male 2 and minor white male 4 ("minors 2 and 4"). Reinhart told the agents that, in June 1997, Carroll had transported the tape to an individual in Houston, Texas who made and retained a copy. A search of Reinhart's computer also provided agents with evidence that Reinhart had accompanied Carroll on this trip to Houston. Specifically, agents found a text document describing a trip that Reinhart took with Carroll to Houston in June 1997 "to copy some pornography tapes." This description was part of a series of entries compiled by Reinhart in documenting his activities in the conspiracy.

The Presentence Investigation Report ("PSR") for Reinhart describes the particular entry as follows: "Randy (Reinhart) and Matt (Carroll) went to Texas to visit a friend of Matt's. While there, Matt and his friend were involved in taking nude pictures of boys ages 7, 9, and 13. This is not the first time this has happened. This weekend trip was supposed to be to see another friend of Matt's so they could copy some pornography tapes." According to the PSR, Reinhart later informed the agents that Carroll took a copy of the videotape of minors 2 and 4 with him on this trip to Houston.

Reinhart and Carroll were indicted on twelve counts of production and distribution of child pornography in violation of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2252(a)(2).[1]  Both defendants

_____

[1] 18 U.S.C. § 2251(a)(2000); 18 U.S.C. § 2252(a)(2) (2000).

3

pleaded guilty in November 1997 to one count of conspiracy to commit sexual exploitation of children in violation of 18 U.S.C. § 2251(a).[2]  The following spring, the district court sentenced Reinhart to 235 months imprisonment, three years supervised release, and a $100 special assessment.  Adopting the recommendations contained in the PSR, the district court held Reinhart accountable for the exploitation of four minor male victims, including minors 2 and 4.

At Reinhart's initial sentencing hearing, his counsel timely objected to the district court's decision to hold Reinhart accountable for the exploitation of all four minors.  Regarding minors 2 and 4, counsel argued that the government had produced no evidence that Reinhart assisted in the creation of the videotape of these two minors.  To this end, counsel noted that the evidence showed that the tape was created in June 1996, more than five

_____

[2] Section 2251(a) states:

Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

4

months prior to December 15, 1996, the date charged in the indictment as the date of the commencement of the conspiracy. The district court did not take issue with Reinhart's counsel's characterization of the evidence related to the creation of the videotape, but overruled his objection on the basis that Carroll's exploitation of minors 2 and 4 in creating the tape formed part of the relevant conduct of Reinhart's offense for which Reinhart could be held accountable under U.S.S.G. § 1B1.3.[3]

On appeal, Reinhart's counsel re-urged his objections to the inclusion of minors 1 and 3 in the guideline calculation but did not challenge the district court's inclusion of minors 2 and 4. Reinhart's trial counsel also wrote and filed Reinhart's original brief on appeal, from which any discussion of his client's accountability for minors 2 and 4 was omitted. Trial counsel then withdrew, and Reinhart retained new appellate counsel to file his reply brief. As Reinhart correctly notes, however, his newly-retained counsel was constrained by trial counsel's failure to brief the issue on appeal.[4] Thus, our determination of ineffectiveness relates solely to trial counsel's performance, in his role as Reinhart's initial appellate counsel, in failing to

---

[3] U.S. Sentencing Guidelines Manual § 1B1.3 (2002).

[4] See United States v. Green, 46 F.3d 461, 465 n.3 (5th Cir.1994) (issues raised for the first time in defendant's reply brief are considered waived).

5

brief on appeal the issue of Reinhart's accountability for minors 2 and 4.

We affirmed the district court's decision to include minor 3, but vacated and remanded for resentencing on the government's concession that the district court had improperly included minor 1 in the guideline calculation. The district court subsequently resentenced Reinhart to 210 months imprisonment.

In August, 2001, Reinhart filed a motion in the district court to vacate, set aside or correct sentence under 18 U.S.C. § 2255. One of the four issues raised in his habeas petition was an ineffective assistance of counsel claim based on his trial counsel cum appellate counsel's failure to appeal the district court's finding that the relevant conduct of his offense included the exploitation of minors 2 and 4. In her Report and Recommendation, the Magistrate Judge rejected each of the grounds presented in Reinhart's petition, including his claim of ineffective assistance of appellate counsel. The district court adopted the Magistrate Judge's Report and Recommendation in its entirety and denied Reinhart's request for a COA. We granted a COA only as to the ineffective assistance of appellate counsel claim. We stated the issue as follows:

> Whether "[Reinhart's] attorney was ineffective for failing to argue on appeal that Reinhart should not be held accountable for purposes of sentencing for males #2 and #4 because he did not participate in the making of the videotape involving those minors and the videotape was made prior to the dates charged in the conspiracy. Given that there is a question as to when the videotape

6

of Carroll having intercourse with [these] two minors was made and whether the 18 U.S.C. § 2251(a) offense with respect to that videotape occurred at the time it was made or at the time it was transported in interstate commerce or both, it is debatable whether Reinhart should have been held accountable for males #2 and #4 at sentencing."

A panel of this court subsequently affirmed the district court's denial of habeas relief in an unpublished opinion,[5] and Reinhart's counsel timely filed a petition for panel rehearing. We granted the petition for rehearing on September 12, 2003 and, having considered the issue as stated in the COA, now reverse the district court's denial of habeas relief and remand for resentencing consistent with this opinion.

## II. ANALYSIS

### A. Standard of Review

The district court determined that Reinhart's appellate counsel was not ineffective because the adjustment for minors 2 and 4 was proper under the guidelines. We review the district court's interpretation of the guidelines de novo and its factual findings for clear error.[6]

"A criminal defendant has a constitutional right to receive effective assistance of counsel on direct appeal."[7] We analyze a

---

[5] No. 02-30697 (July 15, 2003).

[6] See United States v. Carreon, 11 F.3d 1225, 1231 (5th Cir. 1994).

[7] United States v. Phillips, 210 F.3d 345, 348 (5th Cir. 2000)(citing Hughes v. Booker, 203 F.3d 894, 895 (5th Cir. 2000)).

defendant's claim of ineffective assistance of appellate counsel using the familiar two-part <u>Strickland</u> test.[8]  First, we determine whether appellate counsel's performance was constitutionally deficient.[9] Second, we determine whether that deficiency prejudiced the defendant.[10]

## B.  <u>Deficient Performance</u>

Appellate counsel is not deficient for not raising every non-frivolous issue on appeal.[11]  To the contrary, counsel's failure to raise an issue on appeal will be considered deficient performance only when that decision "fall[s] below an objective standard of reasonableness."[12]  This standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful."[13]  "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention."[14]  Thus, to determine whether Reinhart's appellate counsel's performance was substandard, we must

---

[8] <u>See</u> <u>id.</u> at 348 (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1994); <u>United States v. Williamson</u>, 183 F.3d 458, 462 (5th Cir. 1999)).

[9] <u>See</u> <u>id.</u>

[10] <u>See</u> <u>id.</u>

[11] <u>See</u> <u>id.</u> (citing <u>United States v. Williamson</u>, 183 F.3d 458, 462 (5th Cir. 2000)).

[12] <u>Id.</u> (citing <u>Strickland</u>, 466 U.S. at 688).

[13] <u>Id.</u>

[14] <u>Id.</u> (citing <u>Williamson</u>, 183 F.3d at 462-63).

8

consider whether Reinhart's challenge to his accountability for the exploitation of minors 2 and 4 has sufficient merit such that his counsel was deficient in failing to raise the issue on appeal.

Under § 2G2.1, the offense level of a defendant who pleads guilty to sexual exploitation of children in violation of 18 U.S.C. § 2251(a) is determined, in part, by the number of minors exploited in the commission of the offense.[15] Specifically, § 2G2.1(c)(1) requires the sentencing court to treat each minor exploited as though the exploitation of that minor was contained in a separate count of conviction.[16] Before the sentencing court can apply § 2G2.1(c)(1), however, it must look first to § 1B1.3 to ascertain whether the "relevant conduct of the offense includes more than one minor being exploited."[17]

Section 1B1.3(a)(1)(B) defines the relevant conduct of a conspiracy as encompassing "all <u>reasonably</u> <u>foreseeable</u> acts and

---

[15] U.S.S.G. § 2G2.1. Reinhart pleaded guilty to conspiracy to sexually exploit children in violation of 18 U.S.C. § 2251(a), to which offense guideline § 2G2.1("Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material") applies. U.S.S.G. App. A.

[16] U.S.S.G. § 2G2.1(c)(1)("If the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction.").

[17] Application Note 2, U.S.S.G. § 2G2.1 ("Special instruction (c)(1) directs that if the relevant conduct of an offense of conviction includes more than one minor being exploited, whether specifically cited in the count of conviction of not, each such minor shall be treated as if contained in a separate count of conviction.")

omissions of others in furtherance of the jointly undertaken criminal activity."[18]  We have interpreted this provision as requiring a showing that the conduct sought to be attributed to the defendant is both (1) reasonably foreseeable and (2) within the scope of the defendant's agreement.[19] We have also made clear "that the 'reasonable foreseeability' requirement...is prospective only, and...cannot include conduct occurring before the defendant joined the conspiracy."[20]

In challenging his sentencing accountability for the exploitation of minors 2 and 4, Reinhart points out that the videotape of these minors was created by Carroll alone, long before the conspiracy's formation in December 1996.  Thus, he argues, he cannot be held accountable as a co-conspirator for the exploitation of minors 2 and 4 because § 1B1.3(a)(1)(B)'s "reasonable foreseeability" requirement does not permit a defendant to be held accountable for conduct that occurred before he joined the conspiracy.  The government responds that, even if Reinhart's assertion that the videotape was created prior to the conspiracy is

---

[18]  U.S.S.G. § 1B1.3(a)(1)(B)(emphasis added).  Section 1B1.3(a)(1)(B) provides that, "in the case of jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), [the relevant conduct of the offense includes] all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."

[19] Carreon, 11 F.3d at 1228.

[20] Id.

correct, the § 2251(a) offense with respect to minors 2 and 4 was not complete when Carroll created the tape, but instead remained inchoate until the tape was transported from Louisiana to Texas in June 1997, during the course of the conspiracy. The government's argument goes that, because the offense was incomplete until the tape was transported in interstate commerce, well after the formation of the conspiracy, the subsequent transport of the tape during the conspiracy, and thus the exploitation of minors 2 and 4, was conspiratorial conduct "reasonably foreseeable" by Reinhart, for which he could properly be held accountable under § 1B1.3(a)(1)(B).

At the outset, we note that none dispute that Reinhart played no role in the creation of the videotape. The government protests that it never agreed with Reinhart's assertion that the videotape was created before Reinhart joined the conspiracy, yet the government did not contest this assertion at Reinhart's initial sentencing, and has never offered or alluded to any evidence that would tend to show that the videotape was made during the course of the conspiracy. Most importantly, the government did not — and presently does not — take issue with the district court's finding that Carroll sent images from the videotape to Reinhart via email prior to Reinhart's move to Carroll's Louisiana residence in December 1996.[21] As the conspiracy did not commence until "on or

---

[21] In overruling Reinhart's objection to the inclusion of minors 2 and 4, the district court found that Reinhart communicated

11

about December 15, 1996," the only sensible inference is that the videotape was made by Carroll prior to the formation of the conspiracy. We therefore conclude that Reinhart's assertion that the videotape was created solely by Carroll, prior to the formation of the conspiracy, to be a correct characterization of the evidence related to the creation of the tape.

A finding that the videotape was created by Carroll prior to the conspiracy does not, of course, resolve entirely the issue before us, given the government's argument that the § 2251(a) offense related to the videotape remained inchoate until the tape's transport interstate. In advancing this argument, however, the government fails to acknowledge that there are two kinds of § 2251(a) violations — one covering the situation when the defendant has knowledge at the time the visual depiction is created that it would be transported across state lines; the other covering the situation when the defendant has no such knowledge at the time the depiction is created but thereafter actually transports the visual depiction across state lines.[22] That these are alternative forms of § 2251(a) liability is further evidenced by the use of the disjunctive in the final element of § 2251(a): A pornographer violates § 2251(a) if (1) "[he] knows or has reason to know that

_____

with Carroll over the Internet and obtained images from the videotape from Carroll prior to the defendant's relocation to Lafayette.

[22] See 18 U.S.C. § 2251(a) (2000).

12

[the] visual depiction will be transported in interstate or foreign commerce or mailed, _or_" (2) "if such visual depiction has actually been transported in interstate or foreign commerce or mailed."[23] In the case of a violation based on allegations of actual transport of pornography, the offense cannot be complete until the moment the depiction is transported across state lines, and thus remains inchoate until that transport occurs. In contrast, a § 2251(a) violation predicated on a defendant's knowledge or intent to transport pornography, formed at the time of its creation, does not remain inchoate, but rather is complete the moment the depiction is created with the requisite knowledge or intent. In the latter such instance, the government need not prove that the depiction was actually transported across state lines, thus the time of actual transport is irrelevant in determining the time at which the offense occurred.

Because the inchoate character of a § 2251(a) offense depends on whether it is premised on the actual transport of pornography or on the existence of the intent to transport pornography at the time of the depiction's creation, a sentencing court must determine which variety of § 2251(a) liability forms the basis of the conspiratorial activity at issue to ascertain when the predicate offense related to the videotape occurred vis-à-vis the formation of the conspiracy.

---

[23] _Id._ (emphasis added).

13

In the instant case, the government chose not to charge Reinhart and Carroll with the type of § 2251(a) liability that would remain inchoate until the actual transport of the videotape in interstate commerce. Instead, both defendants were charged with and pleaded guilty to one count of conspiracy to create child pornography "<u>knowing</u> that such visual depictions will be transported in interstate commerce." As the defendants' liability was premised solely on the intent to transport pornography when it was created rather than its actual transport, the § 2251(a) offense with respect to the videotape of minors 2 and 4 — and thus the exploitation of minors 2 and 4 — occurred when Carroll created the videotape, which was prior to the conspiracy's formation in December 1996 and did not continue beyond that point. It follows that Reinhart cannot be held accountable for the exploitation of minors 2 and 4 under § 1B1.3(a)(1)(B) because, as we have demonstrated, that provision does not hold a defendant accountable for "the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct."[24]   As we held in <u>United States v. Carreon</u>, § 1B1.3(a)(1)(B)'s "reasonable foreseeability" requirement is "prospective only, and consequently cannot include conduct occurring before the defendant joined the conspiracy."[25]

---

[24] Application note 2, U.S.S.G. § 1B1.3.

[25] <u>Carreon</u>, 11 F.3d at 1228.

14

Reinhart's case is thus distinguishable from the case addressed by the Second Circuit in United States v. Sirois,[26] cited by the government in support of its argument that the § 2251(a) offense related to the videotape of minors 2 and 4 remained inchoate until the moment of its actual transport. The defendant in Sirois was convicted of violating various federal statutes proscribing the sexual exploitation of minors, including one count of aiding and abetting a schoolteacher in the exploitation of a minor male student in violation of § 2251(a).[27] Specifically, the indictment charged that the schoolteacher had transported the minor across state lines for the purpose of having the minor engage in sexual activity so that photographs of that activity might be produced, and that the defendant aided and abetted the offense by taking the photographs.[28] Unlike the instant case, however, the indictment in Sirois further asserted that the photographs actually crossed state lines.[29] Thus, the schoolteacher's § 2251(a) liability was premised on the actual transport of the photographs interstate, not on his knowledge that the photographs would be so transported.

---

[26] 87 F.3d 34 (2d Cir. 1996).

[27] See id. at 37-38.

[28] See id.

[29] See id.

On appeal, the defendant in <u>Sirois</u> challenged the jury charge, arguing that the schoolteacher's § 2251(a) violation occurred as soon as he transported the minor across state lines and that subsequent conduct, including the defendant's photographing of the sexual activity, did not give rise to aiding and abetting liability.[30]  In rejecting this argument, the Second Circuit held that "a violation of § 2251(a) that is based on the <u>actual</u> transportation of child pornography across state lines cannot be complete until the pornography is so transported."[31]  The Second Circuit held that the jury was entitled to find the defendant guilty of aiding and abetting the schoolteacher's § 2251(a) offense because the defendant assisted in the creation of the visual depictions that were subsequently transported — no allegation of knowledge <u>at the creation of the depictions</u> that transport would eventually occur.[32]  The court went on to state, however, that, because § 2251(a) requires <u>either</u> that the pornography actually be transported in interstate commerce <u>or</u> that the defendant know or have reason to know that the pornography will be so transported, it did not hold that "<u>all</u> violations of § 2251(a) remain inchoate until the pornography crosses state lines."[33]  Rather, it expressly

---

[30] <u>See</u> <u>id.</u> at 38.

[31] <u>Id.</u>

[32] <u>See</u> <u>id.</u> at 39.

[33] <u>Id.</u> (emphasis added).

16

declined to decide whether a § 2251(a) violation premised solely on a defendant's original intent to transport would remain ongoing until the photographs were transported interstate.[34]  Accordingly, we do not create a circuit split by holding today that the § 2251(a) offense with respect to the videotape of minors 2 and 4, premised as it was on Carroll's original intent to transport, was complete on creation of the videotape predating the conspiracy's formation.

The government's other arguments for upholding Reinhart's sentencing accountability for the exploitation of minors 2 and 4 are equally unsupportable.  Its contention that Reinhart should be held accountable for what the government ambiguously terms the "instant conduct" of the conspiracy, i.e., all criminal conduct attributable to the conspiracy, fails to acknowledge the crucial distinction between criminal liability and sentencing accountability.  We have consistently held that these two concepts are not coextensive and that § 1B1.3(a)(1)(B)'s "reasonable foreseeability" requirement must be applied to limit a defendant's accountability in sentencing for the conduct of his co-conspirators.[35]

---

[34] See id.

[35] See Carreon, 11 F.3d at 1234 (the Sentencing Commission has "emphatically rejected the notion that criminal liability and sentencing accountability are coextensive").

17

We likewise reject the government's fallacious suggestion that counsel chose not to challenge Reinhart's accountability for minors 2 and 4 out of a concern that, instead of remanding for resentencing, we might have remanded for further factual findings related to the creation of the tape, and that these additional findings might have resulted in an increased sentence. The obvious flaw in this supposition, of course, is that a simple review of the evidence related to the tape, as set forth in the PSR and adopted by the district court, makes clear that Carroll created the tape without Reinhart's assistance prior to the formation of the conspiracy. As these are the only facts related to the tape that are necessary to resolve the issue before us, any possibility of remand for factual findings was remote at best and fails to support the government's argument that counsel had a "strategic" reason for not raising what is, as described above, a meritorious appellate issue.

We are also unpersuaded by the government's argument that Reinhart could be held accountable for the exploitation of minors 2 and 4 under § 2G2.2,[36] the offense guideline applicable to 18 U.S.C. § 2252(a)(2).[37] Section 2252(a)(2) proscribes the knowing

---

[36] U.S.S.G. § 2G2.2 ("Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic.").

[37] 18 U.S.C. § 2252(a)(2) (2000).

receipt of child pornography. Although the government indicted Reinhart under § 2252(a)(2) in addition to § 2251(a), the government voluntarily dismissed all counts based on alleged § 2252(a)(2) violations when Reinhart pleaded guilty to conspiracy to violate § 2251(a). Accordingly, § 2G2.2 is unavailable for use in his sentencing calculation and thus affords no support for the district court's adjustment for minors 2 and 4.

Finally, we reject the government's argument that, even if Reinhart cannot be held accountable for both minors, he can still be held accountable for minor 2 based on the PSR's statement that Reinhart showed minor 2 pornographic materials during the course of the conspiracy in an effort to induce him to engage in sexual conduct. Section 2G2.1(c)(1) specifies that the relevant conduct of a § 2251(a) offense includes only those minors who have actually been exploited; it contains no provision for holding a defendant accountable in sentencing for attempting to entice a minor to engage in sexual conduct. Thus, without further evidence of actual exploitation, the fact that Reinhart showed minor 2 pornographic images, does not warrant an adjustment under § 2G2.1(c)(1).

In sum, because the conspiratorial liability charged in the indictment was premised on the knowledge or intent to transport pornography interstate when the depiction was created, rather than its actual transport interstate, the exploitation of minors 2 and 4 occurred at the moment Carroll created the pornographic videotape, a time that clearly pre-dated the formation of the

conspiracy. It follows that the district court erred in holding Reinhart accountable for the exploitation of minors 2 and 4 in light of our controlling precedent in Carreon, as that conduct occurred before he joined the conspiracy. Accordingly, we hold that Reinhart had a meritorious appellate issue regarding whether the district court properly included minors 2 and 4 in the guideline calculation and that his counsel was deficient for not raising this issue on appeal.

## C. Prejudice

We next consider whether Reinhart was prejudiced by his appellate counsel's deficiency. To establish prejudice, Reinhart must show "that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[38] "A reasonable probability is that which renders the proceeding unfair or unreliable, i.e., undermines confidence in the outcome."[39] When a claim of ineffective assistance of counsel is premised on counsel's failure to raise an issue on appeal, "the prejudice prong first requires a showing that [this Court] would have afforded relief on appeal."[40] Thus, we must

---

[38] Phillips, 210 F.3d at 350 (citing Strickland, 466 U.S. at 694)).

[39] Williamson, 183 F.3d at 463.

[40] Phillips, 210 F.3d at 350.

"counter-factually determine the probable outcome on appeal had counsel raised the argument."[41]

Had Reinhart's initial appellate counsel briefed the issue of Reinhart's accountability for minors 2 and 4, we would have reviewed "'the district court's interpretation of the Sentencing Guidelines <u>de</u> <u>novo</u> and its factual findings...for clear error.'"[42] As the district court committed reversible error in attributing to Reinhart Carroll's pre-conspiratorial exploitation of minors 2 and 4 in the court's relevant conduct determination under § 1B1.3,[43] we would have vacated Reinhart's sentence and remanded for resentencing without the inclusion of minors 2 and 4. Reinhart correctly notes that, without the inclusion of minors 2 and 4 in the guideline calculation, his offense level would have been lower by 3 levels and his guideline imprisonment range would have been 121-151 months, not 168-210 months. This would have resulted in a sentence shorter by five years than the one imposed.[44]

---

[41] <u>Id.</u> (citing <u>Williamson</u>, 183 F.3d at 463).

[42] <u>Phillips</u>, 210 F.3d at 351 (citing <u>United States v. Huerta</u>, 182 F.3d 361, 364 (5th Cir. 1999)).

[43] <u>See</u> <u>Carreon</u>, 11 F.3d at 1241 (sentencing court's error in holding defendant accountable under § 1B1.3(a)(1)(B) for conduct occurring before he joined the conspiracy warrants vacatur of defendant's sentence and remand for resentencing).

[44] <u>See</u> U.S.S.G. § 3D1.4.

The government, relying on our precedent in <u>Spriggs v. Collins</u>,[45] insists that this five-year difference in Reinhart's term of imprisonment is not "significant" enough to warrant a finding of prejudice. In <u>Spriggs</u>, we held that, to prevail on an ineffectiveness claim premised on a noncapital sentencing error, a petitioner must show that "there is a reasonable probability that but for [the attorney's] errors [his]...sentence would have been <u>significantly</u> less harsh."[46] The "significantly less harsh" standard reflected our concern that, particularly in jurisdictions without sentencing guidelines, where courts typically possess a wide range of sentencing discretion, "reversal without a showing that 'the sentence would have been significantly less harsh' would lead to an 'automatic rule of reversal.'"[47]

Reinhart correctly counters that the Supreme Court's recent decision in <u>Glover v. United States</u>,[48] and not <u>Spriggs</u>, states the proper standard for assessing whether the second prong of the <u>Strickland</u> test is met in his case. Elaborating on <u>Strickland</u>'s prejudice requirement in the context of a noncapital error under the Sentencing Guidelines, the <u>Glover</u> Court held that, even though the amount by which a defendant's sentence is increased by a

---

[45]  993 F.2d 85 (5th Cir. 1993).

[46]  <u>Id.</u> at 88.

[47]  <u>Phillips</u>, 210 F.3d at 351 (citing <u>Spriggs</u>, 993 F.2d at 88).

[48]  531 U.S. 198 (2001).

particular decision may be a factor in determining whether counsel's failure to raise an issue constituted ineffective assistance, "under a determinate system of constrained discretion such as the Sentencing Guidelines, it cannot serve as a bar to a showing of prejudice."[49] In so holding, the Court rejected the Seventh Circuit's requirement that the sentencing error result in a "significant" increase in the defendant's term of imprisonment, stating that "any amount of actual jail time has Sixth Amendment significance."[50] Our cases since Glover have acknowledged that this ruling "arguably cast doubt on the Spriggs 'significantly less harsh' rule and may have impliedly rejected it in total."[51]

We need not, however, decide today whether or to what extent Glover abrogates Spriggs, as we are convinced that the five-year

---

[49] Id. at 204.

[50] Id. at 203.

[51] Daniel v. Cockrell, 283 F.3d 697, 706 (5th Cir. 2002); see also United States v. Ridgeway, 321 F.3d 512, 515 n. 2. Acknowledging the possible abrogation of the Spriggs standard, the Daniel panel nevertheless held that Spriggs' "significantly less harsh" standard applied to a defendant's ineffective assistance of counsel claim premised on a Texas noncapital sentencing error on the grounds that the defendant's conviction was finalized prior to the date Glover was decided and that Glover does not apply retroactively. See Daniel, 283 F.3d at 706-07. In Reinhart's case, however, although his sentence was vacated and remanded for resentencing in October 2000 without the inclusion of minor 1, his resentencing did not take place until February 2001 and an amended judgment was not entered until March 2001. As Glover was decided in January 2001 before Reinhart's new sentence was assessed, the non-retroactivity principle does not barthe application of Glover to his case. Thus, to the extent that Glover may have abrogated Spriggs, Reinhart would receive any benefit resulting from that abrogation.

increase in Reinhart's sentence suffices to establish prejudice under either standard.[52]  Accordingly, we conclude that Reinhart has shown the requisite prejudice necessary to establish ineffective assistance of appellate counsel.

### III. CONCLUSION

For the foregoing reasons, we reverse the district court's denial of Reinhart's § 2255 motion, vacate his sentence, and remand for resentencing without including minors 2 and 4 in the calculation.

REVERSED; SENTENCE VACATED; REMANDED for resentencing.

---

[52] As a five year increase is significantly more than the "year or two" sentencing difference that concerned the panel in Spriggs, Reinhart has succeeded in showing that this sentence would have been "significantly less harsh" but for his counsel's error. See Spriggs, 993 F.2d at 88 ("[a]rguably, when the discretionary sentencing range is great, practically any error committed by counsel could have resulted in a harsher sentence, even if only by a year or two.").